5-113 New York-Presbyterian Hospital v. New York State Nurses Association 5-113 New York-Presbyterian Hospital v. New York State Nurses Association I understand we have Attorney Pope for the appellant and you would like to reserve two minutes, is that right? That is correct. Very well, you may proceed whenever you're ready. May it please the Court, this is an appeal from a denial of a motion to vacate a labor arbitration award. We understand that the standard of review in such cases is often extremely narrow and deferential. And we understand that the factual findings of the arbitrator are not up for review because if they were, we'd be saying a lot more. But arbitration awards can and should be challenged when the remedy commits certain cardinal sins. When the remedy violates public policy and when the remedy exceeds the arbitrator's authority under the collective bargaining agreement. If it fails to draw from the words and essence of the CBA. This award commits both of those sins. The CBA is very broad in terms of remedies, right? The CBA actually has no specific remedy clause. Well, doesn't the CBA specify whatever relief in effect the arbitrator has in mind? No, it says that the arbitrator on issues of staffing is empowered to provide the same relief that he or she has for other grievances. There is no specific definition within the CBA as to what that is. No, I understand that. And it's important, I think, to this that when you're talking about. Of course, that could have been refined when the CBA was negotiated. It could have been definite limits on relief put into the CBA. And there could have been an affirmative inclusion of a clause that would have allowed the relief in this. And, in fact, NISNA advocated for that, and they failed to get it. They got it in other hospitals' agreements, and that's why they get these penalties at other hospitals. So what's wrong with the relief that was given here? The amount of money was there was compensation for the extra work or the extra burden on the nurses. And just intuitively, why would that relief make sense? Well, intuitively, it would make sense if you made an agreement for it. But it's not intuitively something that makes sense if you don't make an agreement, because the bargaining table is where the parties work out what the wage rates should be and whether or not something like what is perceived here to be additional work should be compensated at a higher wage rate. The nurses work on ‑‑ they don't work on piece rates. You're saying a higher wage rate. I want to understand that. I'm not quite clear on that part. Well, it's the same wage rate per hour, right? But it's being given ‑‑ well, I suppose it's higher in the sense that you're being given more money for the same hours. Is that right? That's right. But it seems to me there's a burden shifting here. Who should bear the cost issue? It shouldn't be on the nurses who are not responsible for the lack of hires of additional nurses or on the hospital. Well, I don't think that that's quite the place to start with it. It's their way of looking at it. It's a way of looking at it, but I would note that the arbitrator agreed with the hospital. The hospital did everything it could to hire additional nurses, and it was extremely diligent in a difficult market. That's right. The idea is to load up the work on the existing nurses because you were unable to effectively hire the full number of nurses. Well, we worked very diligently towards hiring the full number of nurses, and that the arbitrator recognized throughout this. I would expect no less. Yes. I would expect no less. But still, the bottom line is that the nurses had to work. Their job changed from not only just the regular work on the wages and hours required, but how about on many occasions twice that amount of work? Well, I don't think there were any instances in which there was twice that amount of work. Well, a quarter. Yeah. There may have been on some shifts nurses who ended up having to do more work than they had anticipated. You've got to realize that when we went from, you know, 2022 into 2023, we didn't have a drop off in the number of nurses. We didn't have an increase in the amount of work. We had an increase in the staffing numbers in the grid. So the reason why we have this grievance and why we have this claim for some sort of extra compensation is because, well, you said you would have 31 nurses for that particular shift, and you had 28. Okay? So you didn't change the job. You just changed the standard within the agreement. But was the grid part, was that adopted pursuant to negotiations under the collective bargaining agreement? It was. It was agreed to. I'd like to go back to what you said is the arbitrator couldn't give more money to the nurses because that's the sort of thing that needs to be decided around the bargaining table, right? It does. But the grid was also decided around the bargaining table, right? It was. And the hospital violated the grid, right? Not out of bad faith, but it didn't comply. We had not yet achieved compliance with the new numbers under the grid, but we had not agreed to any remedy for what that would be. Well, Brad, but that's the thing is, but you did agree to arbitrate disputes under the CBA, right? We did. And this is a dispute, right? It is a dispute. And I think you can't contest that the arbitrator reasonably found a violation on the part of the hospital of the CBA because it violated the grid. So I guess it's kind of odd that your argument seems to be you agreed to arbitration so long as the arbitrator doesn't impose a remedy. What's the point of arbitration? No, we agreed to arbitration so long as the arbitrator provides a remedy that is within the – So what remedy could be arbitrated? So assume with me that the hospital violated the CBA when it didn't live up to its promise under the grid. Again, not because of bad faith, but just like any contract, right? Sometimes you just can't live up to it. You can't deliver the goods. You can't get the truck there on time, whatever. What's the remedy that the arbitrator, in your view, was allowed to provide? There is the cease and desist remedy, which is what arbitrator Lovett determined would be the remedy. Before this award, another arbitrator heard one of these staffing violation cases and said the only remedy that is available under the agreement is to issue a cease and desist. And that can then be enforced through a confirmation in potential contempt proceedings if the hospital isn't trying to meet any obligations that it has. And contempt would have yielded a financial reward? It could. It could. And I know, Judge Nodini, you sat on a case a couple of years ago where that was an issue, where an employer was not meeting its obligation under an arbitration award and was contempted. That can be one of the available remedies. Is contempt listed in the CBA as a remedy? It doesn't have to be, Your Honor. Cease and desist is. Well, is cease and desist specifically listed as a remedy under the CBA? It is not. There are no remedies listed. So I guess that's my question. You're telling me you can't, the arbitrator couldn't give money to the nurses because that remedy is not listed in the CBA. But you're saying they could issue a cease and desist order, even though that remedy is not listed in the CBA. So that leaves me with the question, why does it matter under your view whether a remedy is listed under the CBA? Because you're telling us some unlisted remedies can be granted and some can't. Then how is that the deciding factor, whether it's listed in the CBA? Well, let's walk back two steps on this and note that the nurses got everything that is stated in the CBA that they were entitled to for working that shift. It says in the CBA, all the economic terms. They got paid the wage rate. If they were working overtime, they got paid time and a half. They got their vacation days. They got all of the things that the CBA says economically they're entitled to. So if you give them additional compensation, which the parties did not reach an agreement on and which the arbitrator said, you know what the problem with the CBA is? It doesn't provide me any guidance on what to give these nurses if the grid isn't met. When the arbitrator then says, I will give you money for this, she is imposing an economic term that is not in the agreement, and that becomes punitive under federal labor law because it is ‑‑ So the cease and desist order is implicit in the CBA because all it does is say comply with the CBA. Yes. But then it has no teeth. So where do you get the notion that there are teeth? Because there are no teeth listed. So maybe then if a cease and desist order is implicit in any agreement to arbitrate, then where do you get contempt from? Because that's not listed. Right. You start with cease and desist. The arbitrator declares that there's been a violation. Yes, I get that. And tells the management to cease and desist from conduct. I get that. That would be implicit to say comply with the agreement. Right. No problem. I can't do that. If I can't do that, they're in contempt, right? Well, the arbitrator can't hold them in contempt. And then you would have punishment. You would agree that that would be punishment. Well, what happens is the arbitrator doesn't have a contempt power. What the union does, if they believe that the cease and desist is not being complied with and is not being complied with willfully or in some other manner that is culpable, they apply to the court, confirm the award, and then seek contempt sanctions from the court, at which point there would be a determination. So we can get contempt, but you're saying an arbitrator cannot get contempt. There's no contempt power for arbitrators. So you're saying literally, in your view, the only thing an arbitrator can do is scold a party for not complying with the. It's not scolding. I know. It can be embodied in a judgment, and then if someone doesn't obey it, you're saying you can come to court and enforce it. Well, first off, it's a determination, an invaluable determination between the parties as to what the CBA means, which may then affect their positions that they take between them as to what they're going to do. And that the. Usually when there's ambiguity in an agreement and there's an agreement to arbitrate, there's generally viewed to be a delegation of authority to the arbitrator to then interpret the agreement, right? And if there's ambiguity about what the remedies would be, the deal is that you've agreed to let the arbitrator figure out the remedies. And then you come to us if there's been something like manifest disregard of the law or one of the rare exceptions, right? But generally, if there's play in the joint and there's ambiguity, you've agreed to let the arbitrator resolve the ambiguity. Well, I guess I don't see how there's not ambiguity here because there's no remedy stated. It seems to me I don't know what the remedy is. Nobody knows what exact range of remedies you've all agreed to. So why didn't you agree thereby to let the arbitrator figure out what the appropriate remedy would be? There's no limitation on it except that you can't amend the agreement. It's also the case, and that's not a meaningless limitation, Your Honor. When you play into the ambiguity, what the cases have said, when you play into the ambiguity, first off, you have to take into account the bargaining history of parties and the fact that the union sought this express remedy and the management didn't agree to it is an overwhelming indication that this is not a remedy that is in this contract. But secondly, it is a punitive remedy because it does not provide any of the economic benefits that the – does not order the provision of any economic benefits of the contract. You're right. The arbitrator has room to make remedies within the contract. So if we didn't pay somebody – Yeah, but why is it punitive to where the workload has changed, the amount of work has changed for the nurses to have them be paid for that extra work that they have to do? Well, Your Honor, the lead architectural case that you were a member of the panel for out of this Court says that's the sort of thing, you know, when you want to change what somebody's being paid for the work that they're doing, that's the thing you hammer out of the bargaining table. That was not hammered out of the bargaining table here. So it becomes punitive to have – Well, it seems to evolve over time. I understand, Your Honor. I used to be taller and thinner when we were doing this, too. It seems to evolve over time. But the fact is it is punitive. And, you know, we have the many citations in the brief on you. The Fourth Circuit, the Ninth Circuit, the First Circuit, all of these circuits have said that when you're telling people – and their case is having to do with work being done by people, either more work or being replaced at work or whatever. When you don't have an actual loss to the employees involved as to what the contract says, the CBA says they will receive. It becomes punitive. There is a loss. And it's plain from what happened. There's a cost. Let's use the word cost instead of loss. But then there's this – But what's – Are being asked to work more, harder than they would have. It's not – would not be their normal job requirement. It has to go above and beyond the job requirement. Well, that's – Your Honor, there's a leap of faith there that it's above and beyond the job requirement because we don't know that it's above and beyond the job requirement. There may be one nurse who has to do extra work. I thought the figures were pretty high, quite substantial for several periods of time. I don't – I'd have to go back and examine the record again. Yeah. We kind of buried some of this because it's a more factual discussion than one would like to do in these cases. Yeah. We buried it in the footnotes, talking about the idea of the misleadingness of talking about it. Because you can have – you can be three nurses short on a shift, which was really the threshold for the arbitrator imposing her remedy, and you find that that could mean one nurse has some extra work to do. It could mean that two have some extra work to do. It could mean none of them have extra work to do because of the way that work is allocated in this particular unit. So you can't say that nurses are necessarily working harder because you come up a couple of nurses short. And you also can't say, well, they deserve extra compensation for it, because that's what the nurses signed on for with this wage rate that they get. And they bragged about the idea that they got a great wage rate from New York Presbyterian in this particular contract. Can I ask – assume, for the sake of argument, we were to conclude that the award is compensatory. And I know that's your argument that it's not. Let's just assume for the sake of argument that we did. What other basis would there be for you to contest the arbitral award, just that it amended the agreement? Because then you take out the punitive public policy issue, right? Yeah. If it's compensatory, the public policy decision, that's correct. So what is left of your argument that is distinct from that? Is it just that the award of money effectively amends the agreement? It is, that it effectively – And that would be that the arbitrator exceeded her authority. She exceeded her authority because she effectively – No, I know why, but I'm just trying to – breaking into analytical chunks. Is that the only other basis that remains that is distinct from the punitive argument? Yeah, that is distinct from the punitive argument. Is there any other one in addition to that? No. Those are the two, really. We've broken this appeal down into those two issues. Okay. That's just very helpful to know how to divide it into chunks. Right. Okay. I don't know if there are any other questions. We will see you again in two minutes for rebuttal. Why don't we hear from counsel for the appellee, Mr. Levine. Thank you, Your Honors, and good morning. And may it please the Court, Bruce Levine of Cone, Weiss & Simon, counsel for the Appellee New York State Nurses Association, and I'm here with my colleague, Dan Nesbitt. I respectfully submit that the award should be affirmed, and before I get into the meat of my presentation, I just want to respond to certain aspects of the colloquy with my colleague for the appellant. There are no remedies specified in this agreement at all. One cannot argue, therefore, that the arbitrator has no authority to issue any remedy, such as, for example, one presumably counsel wouldn't argue with, and that is to provide back pay to someone who has been unlawfully discharged. The second point I'd like to make is that there was language in this agreement negotiated by the parties until 2019. That language expressly stated that the arbitrator could do no more after a violation except to issue a cease and desist order. That was removed in 2019 by agreement of the parties. It's no longer there. The parties renegotiated the contract in 2023. That provision is no longer there. It is incompatible with basic ordinary contract principles for counsel to argue that that is not significant, that one should enforce a provision that was removed from the contract by agreement of the parties. Having said that, this is a narrow case focused only on the remedy. There's no dispute on appeal, as Judge Walker indicated, that the hospital was found to have repeatedly violated the minimum staffing standards that the parties negotiated for inclusion in the contract. Not that they acted in bad faith, but they did not do what they agreed to do. And the judge, I mean, the arbitrator found that this created adverse, compensable damages, and she made an extra effort to tie the damages that she was awarded to the injuries that she found. So ultimately, we agree on the standards of review. This is not about whether the arbitrator was right or wrong. And I think it's clear here that this contract plainly has this award, plainly has it, was plainly grounded in the contract and, in fact, is inexplicably intertwined with the contract. It's clearly a compensatory award. Why do we say that? Well, first of all, because the arbitrator said it was for the purpose of compensating the nurses for being obliged to work in violation of the contract in more burdensome conditions. She also found that not in every case did nurses suffer a compensable injury because the workload was not sufficiently changed by the lack of less than three nurses on a shift. There was no compensable damages, and so she tailored the award accordingly. She used the contract wage rate, the wage rate agreed to by the parties to award compensatory damages to the nurses who were entitled to that. That negotiated wage rate we submit is the best evidence, not just okay evidence, not just reasonable, but the best evidence of what the work done by the nurses is worth. There is some criticism that the arbitrator chose to award compensatory damages to some nurses on the unit who may not have deserved it because their work roles didn't change. But that's not what arbitrator Weinstock found. After two days of hearing, after reviewing the post-hearing briefs of the parties, she found that all of the nurses on a shift that was understaffed by more than three were entitled to compensation. And she did that on the basis of the evidence that she received from the witnesses of the union, NISLA, and the witnesses from the hospital. Those findings should not be challenged. And those findings reflect clearly that this award clearly draws its essence from the collective bargaining agreement. So what do you make of the distinct argument, not the compensation versus punitive argument, but the argument that by giving the award to the nurses, the arbitrator effectively raised their wage rates beyond what was in the collective bargaining agreement? Because we know that the one limitation on the remedial authority of the arbitrator was that the arbitrator could not amend the agreement. And one clear term in the CBA is what the wage rate will be for the nurses.  So how do you respond to that, that effectively this did raise the wage rate? And that's one of the things that is fixed in stone. It effectively raised the wage rate in the short term and only based upon and dependent upon the arbitrator's factual determinations, that that was a fair measure of the damages that they sustained by working in an understaffed environment. So it is work done in addition to what the parties bargained for. And on that basis, she was awarding damages to make them whole for doing work that they were not expected to do in a very stressful environment where the ratio of nurses to patients is more often than not one-to-one in the principal unit. I'm sorry. Does that answer your question, Your Honor? And so, again, we think that there's really no basis to say that this award is anything but compensatory. Indeed, because the parties had the opportunity to debrief this, the arbitrator fully explored the hospital's argument that somehow this award was punitive. And she was correct, the judge, to reject, the arbitrator to reject that. And then following that, it was correct for the district court judge to reject that as well. Finally, Your Honors, if there's no question about the compensatory nature of the award, I just want to say that the second argument that the appellant raised is also unavailable and should not be used to vacate the award. This contract, as we said, contains no limits on an arbitrator's authority to make remedies. And the Supreme Court and this Court for 60 years have stated that in such situations we defer to the arbitrator's judgment about what a remedy should be. And that is the case here. Now, we do believe, and the arbitrator found and Judge Rashawn also found, that it was materially significant that the limitation on the remedy, the cease and desist language, has been out of the contract for 6 years. It was out of the contract in 2023 when these preventions arose. And therefore, one properly should conclude that one could do more than simply issue a cease and desist order. Finally, on that point, on the lead case that counsel cites to, there the arbitrator actually imposed a contractual wage rate on the parties. That was not done here. There, the arbitrator did what he did, and the zipper clause, the prohibition on adding to or subtracting from the contract, was found to be in play because by adding an actual wage rate to the agreement, the arbitrator improperly amended the agreement. So I am pleased to answer any questions of Your Honors. Otherwise, we strongly urge the Court to affirm the decision of Judge Rashawn. And we thank you for the time. Thank you. I want to hear from Mr. Polk. You have reserved two minutes for rebuttal. If there's any last thing you would like to add. There are a couple of things, Your Honor. First, with regard to the 2019 language, you can't say there's great significance to removing that sentence from the contract and not say there is great significance to the fact that the union wanted to put a specific remedy into the contract. It was rejected and didn't make it in there. And they did it with other hospitals, and that's where it's being done. There's got to be, and the law, the common law of this shop, this industry, says that when you want to have this kind of remedy, you put it in the agreement. We have that from Montefiore. We have that from Mount Sinai. Those agreements are in the record. Secondly, as to what this remedy is about, NISDA said in front of the arbitrator in their closing that this was about allocating to the nurses the wages that Presbyterian saved. They didn't say it was about, you know, doing better for them for overwork. They said, take this away from Presbyterian because they saved some money. And then when, you know, they tried to make it a – that is a high hallmark of punitive award, Your Honor. And then they say that when the – you know, how careful this is about what the nurses did in their work. And there's nothing in this arbitration award that allows you to reach that conclusion. But, frankly, it's punitive. And – but it's also – call it innovative, call it, I think, her own brand of industrial justice. Because that's what she decided when she didn't like what the alternatives were, that another arbitrator had already said this is the remedy that's available with the same agreement, with the same history. There have been subsequent arbitration agreements, none of which have adopted this remedy, arbitration awards, none of which have adopted this remedy. Some have also – you know, the same arbitrator who said no other remedy than cease and desist stood by her opinion. There's a case coming up separately in this circuit that's – in which the arbitrator decided to give away vacation days as a compensation for overwork. So what we have here is just – Is that a good or a bad thing? Is that a good or a bad thing? Yeah, allowed or not allowed. Vacation days? Come to the panel on that one, Your Honor, and I'll tell you why it's bad. I'll tell you why it's really bad. That's something that you're – okay. But one last thing with regard to this, and that is the idea that this is not adding or doing differently to the contract. We have in the brief, and I encourage you to read it, that when you have this void as to specifying remedies in a contract, you're talking about the normal and conventional remedies that arbitrators give. The courts have repeatedly said that. I think even this Court may have said it. And this is not a conventional remedy of that sort. And I urge you to overturn this remedy and this award. It is precisely the area where judicial review needs to occur. Thank you. Thanks to both counsel. We will take the case under advisement. We thank you for your arguments today.